# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD P. SHULTZ,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-94-MHT-DAB |
| ) | |
| **AETNA LIFE INSURANCE** ) | |
| **COMPANY and L-3** ) | |
| **COMMUNICATIONS WELFARE** ) | |
| **PLAN** ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

On February 12, 2016, Plaintiff Richard P. Shultz filed this civil action against Aetna Life Insurance Company ("Aetna") and L-3 Communications Welfare Plan ("the Plan")(collectively, "Defendants"). All claims are brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). The parties filed motions for summary judgment. (Docs. 114, 116), which were denied without prejudice as is customary for consideration of the merits of an ERISA claim. (Doc. 157 at 2). The issues are fully briefed and taken under submission on the record following oral argument. For the reasons stated herein, the Magistrate Judge recommends that the Aetna administrator's decision be reversed and this matter remanded.

1

## I. JURISDICTION

On February 16, 2016, the above-styled matter was referred to the undersigned for review by United States District Judge Myron H. Thompson. (Doc. 4); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990). The court has subject matter over this dispute pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are not contested by the parties, and the court finds sufficient basis in the record to support both.

## II. FACTS

Plaintiff began work for L-3 Communications Corporation ("L-3") in December 2003 as a Field Engineer III and continued in his employment until he received a diagnosis of bladder cancer in July 2013. (Doc. 15 at ¶¶ 39-41). Plaintiff also suffers from several other conditions including chronic blood clotting in his lungs, complications from surgery, chronic fatigue, and memory loss. (Doc. 15 at ¶¶ 42-45). Plaintiff's last day of work with L-3 was July 23, 2013. (Doc. 15 at ¶46).

Aetna served as a fiduciary, underwriter, and claims administrator for the Plan, which is an employee welfare benefit plan as defined by ERISA. (Doc. 117-1 at 1). Plaintiff was a beneficiary under the Plan and applied for short-term disability ("STD") benefits with Aetna under the Plan, which were approved and paid beginning December 12, 2012, through January 23, 2013. (Doc. 117-1 at 1).

However, Plaintiff was unable to return to work with L-3 as of July 23, 2013. (Doc. 117-1 at 91). Specifically, in the Attending Physician Report submitted to Aetna, Plaintiff's treating urologist Dr. Mark Byard stated that Plaintiff was medically disabled beginning July 23, 2013, and "will not return" due to "chronic bladder cancer … chronic pulmonary emboli ([i]noperable) … and a huge hernia [i]noperable." (Doc. 117-1 at 91). Dr. Byard stated that "1/4 of stomach is herniated & inoperable." (Doc. 117-1 at 92). Dr. Byard further stated that Plaintiff had "No ability to work … due to inoperable hernia & pulmonary emboli; patient should do daily activities as his body allows but no heavy lifting, pulling or exertion." *Id.* Plaintiff received treatment in September 2013, including the surgical removal of his bladder and rounds of chemotherapy. *Id.* Dr. Byard indicated that Plaintiff's "Estimated return to work date" was "Never." *Id.*

"Based on the medical information provided by Dr. Mark Byard and/or [Aetna's] medical guidelines," Aetna approved Plaintiff for STD benefits beginning October 29, 2013, and stated that Plaintiff's "claim has been referred to Long Term." (Doc. 117-1 at 5). In a letter to Plaintiff dated November 7, 2013, Aetna stated that its "files indicate you may be eligible for Social Security disability benefits," and informed Plaintiff that Aetna was "making available to you professional representatives to pursue your claim." (Doc. 117-1 at 64). Aetna further stated that "your Long Term Disability benefit would be reduced by any Social Security

3

disability benefits you may receive…" *Id*. In a letter to Plaintiff dated November 21, 2013, Aetna stated that "We have reviewed your claim for long term disability (LTD) benefits and have determined that, based on the information provided, and according to your policy, you are totally disabled from performing the duties of your own occupation." (Doc. 117-1 at 24). Aetna approved Plaintiff for 24 months of LTD benefits beginning October 22, 2013. *Id.* Aetna further stated that it would periodically re-evaluate Plaintiff's eligibility, may ask Plaintiff to be evaluated by an independent physician, or have his records reviewed by a "peer physician consult." *Id*. Aetna further stated that "if you are still totally disabled from your own occupation and eligible for disability benefits on 10/22/2015, you must meet a more strict definition of disability as detailed in the above policy definition to remain eligible for benefits," specifically, that "you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition." *Id*.

Plaintiff continued with his checkups and treatment with his treating physicians, but his improvement and approved physical activity remained minimal, his fatigue increased, and his inability to return to work was repeatedly stated in the reports his treating physicians provided to Aetna. (Doc. 115-15 at 38; 115-33 at 1, 5, 71-72; Doc. 117-1 at 90-92). Specifically, Dr. Byard indicated that Plaintiff had

4

"No ability to work," indicated Plaintiff's ability to return to work was "Never," and that Plaintiff had "Stabilized." (Doc. 115-15 at 38).

The Social Security Administration notified Plaintiff that he was being awarded disability benefits. (Doc. 115-33 at 52-53). In February 2014, Aetna notified Plaintiff that because of his Social Security benefits, Aetna was seeking reimbursement for "overpayment" of $1,984.00 in benefits. (Doc. 117-1 at 27). Beginning in December 2104, Aetna notified Plaintiff that it was reviewing his file to determine if he would be eligible for LTD coverage under the "any reasonable occupation" criteria as of October 21, 2015. (Doc. 115-30 at 71). On May 14, 2015, Aetna sent letters to Dr. Byard and Dr. Scott McAllister, Plaintiff's treating oncologist, regarding Plaintiff's "impairments and functional capabilities" as assessed by a nurse working for Aetna, Adam Friedman. The assessment was largely a recitation of the respective physicians' clinical notes, with an additional assessment by Friedman. Before his "assessment," Friedman stated that "I am inclined to conclude, based on the current medical records in the file, that [Plaintiff] would have full time functional capacity." (Doc. 115-33 at 14, 20). Both physicians signed the assessment in May 2015. However, after learning that Aetna had used those letters to deny benefits to Plaintiff, both physicians subsequently submitted letters to Aetna clarifying or retracting their assessments. Specifically, Dr. Byard indicated that:

> [Plaintiff] has a history of locally advanced transitional cell carcinoma of the bladder that has required an eventual cystoprostatectomy and ilial

conduit in August 2013. He then underwent chemotherapy postoperatively. He has had complications with deep vein thrombosis and recurrent ventral hernias which makes the care of his stoma almost impossible. We have operated on his ventral hernias several times without success. He has a significant risk of recurrence of his bladder cancer. The care of his stoma with it leaking heavily at times is going to make it very difficult for his to return to any job skill with any degree of physical activity. I have recommended for him to apply for long term disability benefits.

(Doc. 117-1 at 80).

Dr. McAllister wrote on June 16, 2015, in pertinent part:

Cognitively, [Plaintiff] certainly could be suffering from the phenomenon of "chemo brain" which would make active engagement in work a challenge. Between the physical challenges that he suffers and the cognitive challenges, I do not feel that his disability should be revoked. I would submit this letter noting that my signature from 05/28/15 was in error on the pre-printed form submitted by Aetna. … I do feel that [Plaintiff] should qualify for continued disability. … I thank you in advance for consideration and re-consideration of this letter.

(Doc. 117-1 at 81).

On June 4, 2014, Kristin Hamilton, MS CRC, an employee of a company named Coventry, submitted a "Transferable Skills Analysis" to Aetna in which she opined that Plaintiff could work as a "boat dispatcher," a "purser," or a "test desk supervisor." (Doc. 115-33 at 11). The assessment states that it was based on "the Coventry referral form and Aetna test change referral form" and the "Aetna WHEQ completed by claimant." (Doc. 115-33 at 8). The assessment, while alluding to the significant physical restrictions placed on Plaintiff, makes no reference to his

6

medical history or review of any of the medical documents otherwise present in Plaintiff's file.

On June 17, 2015, Aetna employee Patrick Geary terminated Plaintiff's LTD benefits effective October 22, 2015, on the basis of the Transferable Skill Analysis that opined Plaintiff could work as a "boat dispatcher," a "purser," or a "test desk supervisor." (Doc. 115-31 at 16). Plaintiff appealed the decision.

As part of the appeal review, Aetna conducted an occupational analysis of Plaintiff's prior occupation with L-3, Field Engineer III, and determined that "it appears [Plaintiff'] job most closely correlates to the following occupation … Help Desk Supervisor," i.e., one of the occupations cited by Aetna as a reasonable occupation for Plaintiff based on the Transferrable Skills Assessment. (Doc. 115-29 at 67). Aetna further requested an independent physician review of Plaintiff's file from MLS Group of Companies, Inc., which had Dr. Elena Antonelli complete the assessment. (Doc. 117-1 at 65).

In her assessment dated July 23, 2015, Dr. Antonelli stated that she made three attempts by phone to contact Dr. McAllister and Dr. Byard between July 14 and 17, 2015, and gave them "deadlines" to contact her, which she claimed they did not. (Doc. 117-1 at 38). A clinical note from Dr. McAllister on July 16, 2015, disputes this claim, stating, "I just left a voicemail for Dr. Antonelli regarding disability on [Plaintiff]. I told [her] that I would be out of pocket for the following week. We were

requested to make this phone call prior to Monday, July 20th ..." (Doc. 117-1 at 78). Dr. Antonelli had a telephone conversation with Plaintiff but performed no physical examination of Plaintiff. (Doc. 117-1 at 35). Based on her phone conversation with Plaintiff and his medical records, Dr. Antonelli opined that Plaintiff was capable of working "full time 8 hours per day and 40 hours per week." (Doc. 117-1 at 40). Dr. Antonelli revised her findings after reviewing the letters submitted by Dr. McAllister and Dr. Byard, but stated that nothing in the letters changed her previous determination. (Doc. 117-1 at 67). However, Dr. Antonelli did state that "From a cognitive standpoint, neuropsychological test findings documenting [Plaintiff's] memory/cognitive deficits would be helpful to further understand the nature of [Plaintiff's] condition, if available." *Id.* The record is silent as to any such testing following Dr. Antonelli's recommendation.

Based on Dr. Antonelli's recommendation, Aetna denied Plaintiff's appeal on September 22, 2015, in a letter signed by Ashley Cary, Appeal Specialist. (Doc. 115-31 at 48). Despite Dr. Antonelli's recommendation being based on Plaintiff's past medical records, Aetna stated that "Based on the clinical evidence on file, from July 1, 2015, ... You can work full time 8 hours per day and 40 hours per week." *Id.*

On February 12, 2016, Plaintiff filed a Complaint in this court against the Defendants. On March 30, 2016, Plaintiff amended his complaint, alleging three counts:

>Count I - Relief under 29 U.S.C. § 1132(a). (Doc. 15 at ¶¶ 104-15).
>
>Count II - Breach of Fiduciary Duty against Aetna under 29 U.S.C. §§ 1332, 1104, and 1105. (Doc. 15 at ¶¶ 116-22).
>
>Count III - Breach of Fiduciary Duty against the Plan under 29 U.S.C. §§ 1332, 1104, and 1105. (Doc. 15 at ¶¶ 123-31).

Counts II and III were dismissed with prejudice pursuant to the judgment entered by the District Judge on October 3, 2016. (Doc. 59). On January 3, 2017, Aetna (Doc. 114) and Shultz (Doc. 116) both filed motions for summary judgment on the remaining count. This Court heard oral argument on those motions on April 18, 2017. (Doc. 156). At the hearing, "Counsel concurred with the Court's suggestion that the merits be addressed based on the briefing to date, without resort to the strictures of Rule 56, F.R.Civ.P." (Doc. 157). Accordingly, the motions to dismiss were denied without prejudice to consideration of the merits of Shultz's remaining ERISA claim. (Doc. 157 at 2).

## III.  STANDARD OF REVIEW

As recently reiterated by the Eleventh Circuit in the unpublished decision of *Nolley v. Bellsouth Long Term Disability Plan For Non-Salaried Employees*, 610 Fed. Appx. 841 (11th Cir. 2015):

>[u]nder ERISA's civil enforcement provisions, a plan participant may bring a civil action against the plan administrator to recover <u>wrongfully denied benefits due</u> to her under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1). Although ERISA itself does not provide any standards for judicial review <u>of a plan administrator's benefits determination</u>, the Supreme Court has articulated a framework for judicial review, which

9

we have distilled into a six-part test. *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 672 (11th Cir. 2014). Thus, a court reviewing <u>a plan administrator's benefits decision</u> should conduct the following multi-step analysis:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious. [*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).]

In tackling the first prong of the six-part test, we review the administrator's decision for correctness, based upon the evidence before the administrator at the time of <u>its benefits decision</u>. *Melech*, 739 F.3d at 672. If we would have reached the same decision as the administrator, the judicial inquiry ends, and judgment in favor of the administrator is appropriate. *Id.* at 672–73.

*Nolley*, 610 Fed. Appx. 842-3.

## IV. DISCUSSION

The court must first "[a]pply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision)." *Blankenship*, 644 F.3d at 1355. That prong is met. Aetna denied Plaintiff's LTD benefits on the advice of an outside doctor who never saw the Plaintiff, made minimal and disputed effort to contact the Plaintiff's two treating physicians, and placed no weight on the Plaintiff's treating physicians' opinions. Even ignoring Dr. Antonelli's assessments, Aetna made its decision to review whether Plaintiff was no longer disabled less than a year after Plaintiff had been approved for Social Security disability benefits specifically at Aetna's suggestion and with their assistance. (Though Aetna must reach its own separate decision, it is notable that the Social Security Administration uses a standard of inability to perform any substantial gainful activity. This is a much more stringent standard than the "reasonable occupation" standard under the LTD policy.) Aetna ignored the suggestions of both Dr. McAllister and Dr. Antonelli that Plaintiff was in need of cognitive evaluation. Moreover, the record is replete with medical reports specifically stating that Plaintiff could "never" return to work at any level of skill, even on a part-time basis. Simply put, Aetna's decision that Plaintiff was capable of working at all, much less 8 hours a day and 40 hours a week, has no reasonable basis

or support in the extensive medical records before this court.

The second prong of the test is whether the administrator's decision "was vested with discretion in reviewing claims…" *Blankenship*, 644 F.3d at 1355. Neither party argues that the administrators who rendered the decision to terminate Plaintiff's LTD benefits or to affirm that decision on appeal lacked discretion. Rather, both parties proceed to argue the third prong, "whether 'reasonable' grounds supported [the decision] (hence, review his decision under the more deferential arbitrary and capricious standard)." *Blankenship*, 644 F.3d at 1355.

As such, the issue before this court is whether it was arbitrary and capricious for the Aetna administrators to decide that Plaintiff, with a "huge" inoperable hernia, inoperable pulmonary emboli, chronic fatigue, a leaking stoma, limited mobility, limited physical ability, and showing signs, even by the independent doctor's review (who never laid eyes or hands on the Plaintiff), that Plaintiff was in need of cognitive testing, was capable of working a full-time job after being found totally disabled by the Social Security Administration, a determination which Aetna had suggested and supported. In reviewing this prong, the court notes that Aetna, in its effort to prove that Plaintiff could engage in a full-time job, determined that Plaintiff's employment with L-3 as a Field Engineer III, "most closely correlates to the following occupation … Help Desk Supervisor," i.e., one of the very occupations cited by Aetna as a "reasonable occupation" for Plaintiff based on the Transferrable Skills Assessment,

and the basis for ending his LTD benefits. (Doc. 115-29 at 67). In other words, Aetna, by its own admission, determined that the prior occupation, from which Plaintiff was unquestionably disabled, was the direct equivalent of the "reasonable occupation" Aetna used to terminate those same LTD benefits.

Moreover, as both parties note and argue, the administrator's determination was made without benefit of the record that was before the Social Security Administration, the very record that was generated at Aetna's suggestion and with Aetna's assistance. Aetna was diligent in suggesting that Plaintiff apply for Social Security Disability Insurance benefits and equally diligent in recovering its share of those benefits once they were awarded to Plaintiff, but then failed to consider or include in the record the information that supported that award. Both parties could and should have used the administrative proceedings to more fully develop the record with the details they now wish to rely on for their respective positions. Accordingly, Aetna's decision, on the record before this court, was not reasonable and, for that matter, was arbitrary and capricious, specifically because the record is unsatisfactory and both sides are entitled in the first instance to an administrative decision based on a proper record. Therefore, the appropriate remedy is remand with the opportunity to complete the record and obtain a new decision.

## V.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the administrator's decision be **REVERSED** and this matter **REMANDED** to complete the record and obtain a new decision.

It is **ORDERED** that the parties shall file any objections to this Recommendation on or before **July 28, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 13th day of July, 2017.

/s/ David A. Baker
David A. Baker
United States Magistrate Judge