IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

RICHARD P. SHULTZ,                )
                                  )
        Plaintiff,                )
                                  )       CIVIL ACTION NO.
        v.                        )        1:16cv94-MHT
                                  )           (WO)
AETNA LIFE INSURANCE              )
COMPANY and L-3                   )
COMMUNICATIONS WELFARE            )
PLAN,                             )
                                  )
        Defendants.               )

OPINION AND ORDER

This case has been brought pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), as

amended, 29 U.S.C. § 1001, et seq. After being awarded

long-term-disability benefits because he can no longer

work, plaintiff Richard P. Shultz now seeks, under

ERISA's fee-shifting provision, 28 U.S.C. § 1132(g)(1),

attorney's fees and costs from defendants Aetna Life

Insurance Company and L-3 Communications Welfare Plan.

For the reasons below, the court holds that Shultz's

petition for attorney's fees and costs is due to be granted, though not for the full amount requested.

## I. BACKGROUND

As described in the magistrate judge's first recommendation, Shultz began working as an engineer for a company in 2003. Rep. & Rec. (doc. no. 158) at 2. After being diagnosed with bladder cancer in July 2013, he could no longer work; his last day on the job was July 23, 2013. One of his treating physicians stated that Shultz had, "No ability to work ... due to inoperable hernia & pulmonary emboli." *Id.* at 3. The physician later indicated that Shultz's "Estimated return to work date" was "Never." *Id.* Based at least in part on that physician's findings, Aetna Life approved Shultz's short-term disability benefits beginning in September 2013 and later approved his claim for 24 months of long-term-disability benefits beginning on October 22, 2013. Aetna Life informed Shultz that, should he still be disabled after 24

2

months, he would need to meet a more stringent definition of "disabled" to continue receiving benefits; specifically, he would need to show that he was "unable to work at any reasonable occupation solely because of an illness, injury, or disabling pregnancy-related condition." *Id.* at 4.

At Aetna Life's prompting, Shultz applied for, and received, Social Security Disability Income. Aetna Life sought reimbursement for those payments to recoup part of the payments it had made to Shultz. *Id.* at 5. However, the magistrate judge noted that the standard for Social Security disability benefits--which Shultz satisfied--is much higher than Aetna Life's "reasonable occupation" standard. *Id.* at 11.

As Shultz continued the treatment for his cancer and as the end of the 24-month period approached, Aetna Life investigated whether Shultz was able to work in "any reasonable occupation." An Aetna Life nurse reviewed Shultz's file and noted that he was "inclined to conclude, based on the current medical records in

the file, that Richard Shultz would have ful[l] time functional capacity." Claim File Pt. 2 (doc. no. 115-33); *see* Rep. & Rec. (doc. no. 158) at 5. Aetna Life provided the nurse's assessment to Shultz's treating physicians for their approval, and both signed it. However, each physician later wrote with concerns about Shultz's ability to work; in fact, one physician wrote that "th[e] letter noting [his] signature ... was in error on the pre-printed form submitted by Aetna." Rep. & Rec. (doc. no. 158) at 6.

Aetna Life eventually terminated Shultz's long-term-disability benefits based on a "Transferable Skill Analysis" that found that he could work as a "boat dispatcher," "purser," or "test desk supervisor," a job very similar to the one that he was previously deemed incapable of working. *Id.* at 6-7 (referring to Shultz's prior job as a "Help Desk Supervisor"). When Shultz appealed Aetna Life's determination to a higher level, Aetna Life requested that an independent

physician, Dr. Elena Antonelli, complete an assessment. *See id.* at 7.

Dr. Antonelli said she attempted to reach Shultz's treating physicians, but that they failed to return her calls; at least one of the physicians disputed that account. Dr. Antonelli never physically examined Shultz but, based on a telephone conversation and a review of his medical records, she determined that he could return to work. She later read letters, submitted by Shultz's treating physicians, which stated that they did not agree that Shultz was able to return to work, but the letters did not affect her decision. *See id.* at 8. Dr. Antonelli noted that neurocognitive testing might be helpful to better understand Shultz's condition, but the record contains no indication that such testing occurred. Based on Dr. Antonelli's review, Aetna Life denied Shultz's appeal. *See id.*

Shultz then filed suit in this federal court, claiming that Aetna Life and the Welfare Plan improperly withheld long-term-disability and other

related benefits from him. The magistrate judge, to whom the case had been referred, recommended that the matter be remanded to Aetna Life's administrator so the parties could "complete the record and obtain a new decision." *Id.* at 13. In a later recommendation noting again that the court was without the benefit of a complete record, the magistrate judge declined the Welfare Plan's request to rule as to the claim against it for non-long-term-disability benefits. *See* Supp. Rep. & Rec. (doc. no. 164). Over objections, the court adopted both of the magistrate judge's recommendations and remanded the case to the Welfare Plan for a new determination on a complete record. *See* Judgment (doc. no. 172).

Following the remand order, Shultz timely filed the pending petition for attorney's fees and costs. After he filed the petition, Aetna Life notified him that it was reinstating his long-term-disability benefits. *See* Pl.'s Supp. to Mot. for Attorneys' Fees (doc. no. 184-1) at 1. He supplemented his petition to reflect that

6

he had prevailed in getting his long-term-disability benefits. *See id.* But he also asked the court to keep the case pending because the parties still had to address "ancillary benefits and a few secondary issues." *Id.* Shultz has now represented to the court that the parties "recently resolved all remaining administrative issues not presently before the [c]ourt." Pl.'s Statement Regarding Conclusion of Admin. Process (doc. no. 187) at 1.

Aetna Life and the Welfare Plan oppose Shultz's petition for fees and costs. They argue that (1) he did not achieve the required "success on the merits" to warrant attorney's fees; (2) the court should exercise its discretion to deny attorney's fees; and (3), in the alternative, the court should dramatically reduce his requested fees and eliminate his requested expenses.[1] The court will address each of these arguments in turn.

---

1. In telephonic conference calls on April 5 and December 19, 2018, the parties declined the opportunity to present supplemental briefing on: (1) Aetna Life's decision to reinstate Shultz's long-term-disability

## II.  DISCUSSION

The court's analysis proceeds in two parts.  First, the court considers whether Schultz is entitled to an award of attorney's fees and expenses from Aetna Life and the Welfare Plan under 29 U.S.C. § 1132(g)(1). Second, the court considers the amount of attorney's fees Schultz may recover.

### A.  Schultz has demonstrated that he is entitled to attorney's fees under ERISA.

Under § 1132(g)(1), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party" provided that "the fee claimant has achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).  Following his new benefit determination and award of long-term-disability

_____

benefits; and (2) the resolution of ancillary benefits and administrative matters.

8

benefits, there is no question that Shultz has satisfied this threshold requirement.

However, even when a party has achieved some degree of success on the merits, there is "no presumption in favor of granting attorney's fees to a prevailing claimant in an ERISA action." *Freeman v. Cont'l Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993). Instead, the court is required to consider the following five factors: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." *Iron Workers Local No. 272 v. Bowen*, 624

F.2d 1255, 1266 (5th Cir. 1980) (footnote omitted);[2] *see also McKeown v. Blue Cross Blue Shield of Alabama*, 497 F. Supp. 2d 1328, 1332 (M.D. Ala. 2007) (Thompson, J.). "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address." *Iron Workers Local*, 624 F.2d at 1266. Applying these factors to the case, the court finds that Schultz is entitled to an award of attorney's fees.

### 1. Culpability or Bad Faith

The culpability-or-bad-faith factor weighs in Shultz's favor. Bad faith is a high bar. It is the "conscious doing of a wrong," *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999); "knowingly or recklessly pursu[ing] a frivolous claim or engag[ing]

---

2. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

in litigation tactics that needlessly obstruct the litigation of non-frivolous claims," *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225–26 (11th Cir. 2003); or "deliberate deception, gross negligence or recklessness," *Am. Bankers Ins. Co. of Fla. v. Northwestern Nat'l Ins. Co.*, 198 F.3d 1332, 1336 (11th Cir. 1999); *see also Cross v. Quality Mgmt. Grp., LLC*, 491 F. App'x 53, 56 (11th Cir. 2012).

But culpability is a lower standard than bad faith. *See Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1345 (11th Cir. 2001). Courts have found that an administrator's failure to consider all the appropriate medical evidence in the case indicates, at minimum, culpability. *See Hines v. Unum Life Ins. Co. of Am.*, 110 F. Supp. 2d 458, 469 (W.D. Va. 2000) (Williams, J.) (finding bad faith in part because administrator failed to consider relevant medical evidence); *Lijoi v. Cont'l Cas. Co.*, 414 F. Supp. 2d 228, 249 (E.D.N.Y. 2006) (Glasser, J.) (finding culpability, but not bad faith, on the part of administrator who failed to consider new

evidence of disability); *Powers v. Thermadyne Holdings Corp.*, No. 99-1427-WEB, 2001 WL 487902, at *11 (D. Kan. Feb. 6, 2001) (Brown, J.) (declining to find bad faith but finding that defendant's failure to consider appropriate evidence weighed in favor of awarding attorney's fees).

The court finds that Aetna Life and the Welfare Plan acted with culpability because they failed to consider all relevant information before making a benefits determination. They argue that they had no obligation to seek out "evidence which is in the possession of others." Def.'s Resp. to Mot. for Summary Judgment (doc. no. 134-15) at 31. But it later came to light--after a protracted discovery dispute the court had to resolve--that Aetna Life already had access to Shultz's medical records. *See* Sealed Document (doc. no. 145). Moreover, in making its benefits decision, Aetna Life did not consider any evidence produced in Shultz's Social Security benefits application, which Aetna Life itself prompted Shultz to

make.[3]   Aetna Life's failure to give consider all relevant evidence before denying Shultz's claim points to culpability on the insurance company's part.

Because Aetna Life's investigation was "not as thorough as it should have been to provide an impartial determination," *Anderson v. Unum Life Ins. Co. of Am.*, No. CIVA 2:01CV894-ID, 2007 WL 604728, at *6 (M.D. Ala. Feb. 22, 2007) (DeMent, J.), this factor weighs in favor of Shultz.

### 2.  Ability to Satisfy the Award

The ability-to-satisfy-award factor weighs in favor of Shultz, as Aetna Life and the Welfare Plan concede that they have the financial resources to satisfy the award.  *See* Def.'s Resp. in Opp. To Pl.'s Pet. (doc. no. 182) at 20-21.

---

2.   This evidence is not contained in the record. *See* Rep. & Rec. (doc. no. 158) at 13.

### 3. Deterrence

The deterrence factor weighs in favor of an award of attorney's fees. Aetna Life and the Welfare Plan argue that, because they have done "nothing to be deterred," *id.* at 21, this factor weighs against an award. Specifically, they contend that, were this factor to weigh against them, the court would risk improperly awarding punitive damages in violation of binding precedent. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144-46 (1985) (holding that punitive damages are unavailable under ERISA).

That argument is based on a misunderstanding of this factor. A finding that Aetna Life's conduct should be deterred does not render punitive an award of attorney's fees. Instead, "the deterrent value of an award of attorneys' fees is high." *National Cos. Health Benefit Plan v. St. Joseph's Hosp., Inc.*, 929 F.2d 1558, 1575 (11th Cir. 1991), *abrogated on other grounds by Geissal v. Moore Med. Corp.*, 524 U.S. 74 (1998). If a culpable party did not have to pay

attorney's fees, "it would only be liable for what it should have covered before this litigation commenced." *Id*. "With nothing to lose but their own litigation costs, other ERISA-plan sponsors might find it worthwhile to force underfinanced beneficiaries to sue them to gain their benefits or accept undervalued settlements." *Id.*

An award here would not *punish* Aetna Life and the Welfare Plan; rather, it would *deter* future similar conduct by all plan administrators who make benefits decisions without considering the full administrative record. Accordingly, this factor weighs in favor of an award of attorney's fees.

### 4. Whether an Award Would Benefit All Plan Members or Resolve a Significant Legal Question Regarding ERISA Itself

This factor only slightly favors Shultz. Shultz admits this case did not seek to aid other plan participants. Nonetheless, he argues that his briefing on ancillary benefits addresses new questions, and that

the court's ruling provides authority "setting out what it takes for an insurer's decision to be reversed." Pl.'s Reply Regarding Pet. for Atty's Fees and Costs (doc. no. 177) at 27.

Shultz's argument on the ancillary-benefits issues falls short.  The court did not resolve the merits of Shultz's ancillary-benefits claims--those claims were resolved by the parties.

But he fares better on his argument that the court's decision adds to ERISA jurisprudence.  Although the court did not conclusively resolve any legal questions surrounding the plan's interpretation, there is precedential value in the court's assessment of how the plan administrator applied it.  The court's decision provides guidance to plan administrators in how they should make benefits decisions, which will indirectly benefit other plan participants.  It likewise serves as persuasive authority for other courts in deciding whether a benefits decision was arbitrary and capricious.  *See Campbell v. United of*

*Omaha Life Ins. Co.*, 283 F. Supp. 3d 1138, 1143 (N.D. Ala. 2017) (Ott, M.J.) (explaining that the court's ruling that an administrator's denial of benefits was erroneous "provide[s] some persuasive authority for the future when a court must evaluate the proper course in deciding whether to render a decision premised on the record or to remand the case to an administrator"). This factor thus weighs slightly in favor of Shultz.

    5.  The Relative Merits of Each Party's Position

    This factor clearly weighs in favor of Shultz.  On remand, the plan administrator found that Shultz was entitled to long-term-disability benefits, a result clearly evidencing that Shultz's position on the merits was correct.  *See Campbell*, 283 at 1143 ("Plaintiff's position on the merits was correct, as evidenced by the final determination by the Plan administrator on remand.").

After considering the *Iron Workers* factors, the court finds that Shultz is entitled to an award of attorney's fees in this case.


## B. Amount of Fees

Having found that Shultz is entitled to attorney's fees, the court must now determine the amount of fees that are warranted. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court will first consider the appropriate rate for Shultz's attorneys in this case.


### 1. Hourly Rate

The parties agree that one of Shultz's attorneys, Lee P. Fernon, is entitled to a rate of $ 250 per hour. Similarly, the parties agree that Claudette Fowler, a paralegal, is entitled to a rate of $ 125 per hour.

The parties disagree, however, as to the rate for Thomas Sinclair. Shultz requests $ 475 per hour for Sinclair, while Aetna Life and the Welfare Plan maintain that Sinclair is entitled to a rate of not more than $ 350 per hour.

A reasonable hourly rate "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Generally, the market "rate of attorney's fees is that of the place where the case is filed." *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). Notwithstanding this general rule, Sinclair argues that he is entitled to a higher fee than the local market can bear because "ERISA is a national practice that is not normally compensated based solely on the typical attorney rates in the area in question." Pl.'s Pet. for Atty's Fees and Costs (doc. no. 179) at 30. In support of his position, Shultz cites several

out-of-circuit cases that have applied national market rates in the ERISA context. *See, e.g.*, *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009); *Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2015 WL 4881459, at *9 (S.D. Ohio Aug. 13, 2015) (Watson, J.).

This court has been unable to uncover any instance of a court in the Middle District of Alabama--or elsewhere in the Eleventh Circuit--applying national market rates for attorney's fees in ERISA litigation. As pointed out by Aetna Life and the Welfare Plan--and conceded by Sinclair--a court in the Northern District of Alabama rejected Sinclair's request to apply national market rates in a similar case. *See Campbell*, 283 F. Supp. 3d at 1144-46. In determining that a national market rate for ERISA litigation in Alabama was not warranted just last year, the *Campbell* court reasoned that (1) Sinclair's declaration about the lack of ERISA lawyers in Alabama was speculative and conclusory; (2) there was no evidence that the

plaintiff had difficulty finding an attorney; and (3) there was no evidence that ERISA plaintiffs had difficulty finding counsel in that specific jurisdiction. *Id.* at 1147-48.

Attempting to cure these deficiencies and receive a higher rate of pay, Sinclair now offers compelling evidence that just ten attorneys in Alabama are responsible for nearly 60 % of the state's ERISA cases. Pl.'s Reply Regarding Pet. for Atty's Fees and Costs (doc. no. 183) at 20. Therefore, his argument goes, it must be difficult for wronged individuals to find attorneys to represent them in ERISA litigation, and paying a national market rate to ERISA attorneys is the only way to right this wrong.

But "[c]ourts are not authorized to be generous with the money of others." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Sinclair's office is in Birmingham, Alabama, and this action was filed in Montgomery. Sinclair appears to be a capable attorney and may command fees as high as

$ 625 elsewhere, *see Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 852 (N.D. Cal. 2017) (Tigar, J.), but the court does not agree that fees paid in his faraway litigation dictate the fee that Sinclair deserves here.

This court is mindful, however, of the statistics cited by Sinclair and cognizant of the difficulty of ERISA litigation. For that reason, the court will consider the relevant market to be the state of Alabama and apply an hourly rate of $ 350 per hour--the same rate he was paid in Birmingham--even though this case was filed in Montgomery, an area with lower costs and expenses. In making this determination, the court has considered the affidavits filed by Sinclair as well as the affidavits filed by Aetna Life and the Welfare Plan, and concluded that $ 350 (as opposed to $ 475) per hour is the appropriate rate. As the parties have agreed, the court also finds appropriate rates of $ 250 per hour for Fernon and $ 125 per hour for Fowler.

## 2. Reasonable Hours

Having determined an appropriate hourly rate, "[t]he next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.2d at 1301. The court should exclude "excessive, redundant or otherwise unnecessary hours." *Id.* (internal citation and quotation marks omitted). The party challenging the hours must be "reasonably precise" in its "objections and proof" with respect to the challenged hours. *Id.* There are ten portions of Shultz's claimed hours that Aetna Life and the Welfare Plan contest, though they rarely cite specific entries of the hourly records. It is often unclear what, precisely, they challenge, and, in many cases, there is no way for the court to determine which hours they say warrant reduction. And, even where the court can discern the entries to which they object, at least one of their objections is in error.[4] Aetna Life and the

_____

4. The court assumes that these errors were accidental and not violations of defense counsel's duty of candor to the court.

Welfare Plan contend that Shultz's motions to compel discovery were denied by the magistrate judge, but omit the fact that one of these denials was later overruled by this court on review of the magistrate judge's decision. *See* Order (doc. no. 144).

Along the same lines, Aetna Life and the Welfare Plan object to time spent by Shultz's attorneys on summary-judgment briefing because Shultz did not prevail on summary judgment. However, Shultz *was* successful in achieving remand, and the court did not reach several of Shultz's arguments *because* it ordered remand. That the court did not need to reach each of Shultz's arguments does not indicate that Shultz's arguments were meritless or that he should have known at the outset that they would ultimately become unnecessary.

Given that the fee application is voluminous; that Aetna Life and the Welfare Plan's objections are imprecise; and that determining the appropriateness of some of the billed hours would require the relitigation

of the parties' discovery disputes, this court will not undergo "an hour-by-hour review [that] is both impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). Instead, the court will employ an across-the-board percentage cut in which "the court aims to simulate the effect of a line-by-line analysis while avoiding the waste of judicial resources that such an impractical approach would entail." *Laube v. Allen*, 506 F. Supp. 2d 969, 981 (M.D. Ala. 2007) (Thompson, J.).

Aetna Life and the Welfare Plan proposed an across-the-board cut of two thirds of Shultz's attorneys' hours because of his "extremely limited success," a claim they made before Shultz was awarded long-term-disability benefits on remand. Def.'s Resp. in Opp. To Pl.'s Pet. (doc. no. 182) at 35. Meanwhile, Shultz proposes a 10 % reduction in hours as a "compromise" position. Pl.'s Reply Regarding Pet. for Atty's Fees and Costs (doc. no. 183) at 29.

The court finds that a 10 % reduction is reasonable and appropriate. Although Shultz prevailed on the merits and was awarded his long-term-disability benefits, some claims were dismissed, and the court "must deduct time spent on discrete and unsuccessful claims." *Norman*, 836 F.2d at 1302. The court will deduct no more than 10 % of the hours expended because Aetna Life and the Welfare Plan failed to make "reasonably precise" objections to the hours expended, *id.* at 1301, and the court find reasonable the remaining hours expended by Shultz's counsel.

Shultz requests the following hours: 148.5 hours for Sinclair; 400.4 hours for Fernon; and 45.5 hours for Fowler. Decl. of Thomas Sinclair (doc. no. 177-6). After a 10 % reduction, those hours are: 133.7 hours for Sinclair; 360.4 hours for Fernon; and 41 hours for Fowler.

### 3. Other Matters

Finally, Aetna Life and the Welfare Plan argue that Shultz is not entitled to costs and expenses under Rule 54 of the Federal Rules of Civil Procedure because he is not a prevailing party. For the reasons already given above, this argument is meritless.

Aetna Life and the Welfare Plan also argue that, under ERISA's fee-shifting provision, certain costs (including legal research, postage, and travel) can be recovered only "if it is the prevailing practice in the legal community to bill fee-paying clients separately for those expenses," *Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014), and Shultz has not carried his burden to demonstrate that it is the prevailing practice. In response, Shultz states that "the Court is the best position to determine what the prevailing practice is," Pl.'s Reply Regarding Pet. for Atty's Fees and Costs (doc. no. 183) at 45, and that similar expenses were approved without objection in *Campbell v. United of Omaha Life Ins. Co.,* 283 F. Supp. 3d at 1152.

Because the court is not convinced that the single, uncontested award of costs in *Campbell* is sufficient to establish the prevailing practice in the legal community, Shultz has failed to carry his burden. Therefore, the court will exclude the following costs claimed by Shultz: $ 340.24 for shipping; $ 651.40 for electronic research; and $ 95.23 for travel.

This court has carefully considered additional factors listed and discussed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), but they do not warrant a different result.

**\*\*\***

For the above reasons, it is ORDERED that:

(1) Plaintiff Richard P. Shultz's petition for attorney's fees and costs (doc. no. 177) is granted, though not for the full amount requested.

(2) Attorney's fees are awarded to plaintiff Shultz from defendants Aetna Life Insurance Company and L-3 Communications Welfare Plan to the following extent:

(a) For Thomas Sinclair at the rate of $ 350 per hour for 133.7 allowable hours, totaling $ 46,795.

(b) For Lee P. Fernon at the rate of $ 250 per hour for 360.4 allowable hours, totaling $ 90,100.

(c) For Claudette Fowler at the rate of $ 125 per hour for 41 allowable hours, totaling $ 5,125.

(3) Expenses and costs are awarded to plaintiff Shultz from defendants Aetna Life Insurance Company and L-3 Communications Welfare Plan in the amount of $ 1,744.72.

This case remains closed.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DONE, this the 13th day of August, 2019.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE